UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY ALLAN JONES,

                Petitioner,                Case No. 10-12667
                                                    HON. BERNARD A. FRIEDMAN

vs.

CINDI CURTIN,

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS**

**I.    Introduction and Facts**

This matter is before the Court on petitioner's pro se request for habeas relief pursuant to 28 U.S.C. § 2254. Petitioner was convicted in the Wayne Circuit Court of second-degree murder, MICH. COMP. LAWS § 750.317; possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b; and felon in possession of a firearm. MICH. COMP. LAWS § 750.224f. He was sentenced as a third-time habitual offender to a 33-to-50 year prison term for the murder conviction, 3-to-5 years for the felon in possession conviction, and a consecutive 2 year term for the felony-firearm conviction.

The petition raises four claims: (1) the trial court coerced a reluctant juror to participate in deliberations; (2) the trial court erroneously admitted evidence of a witness's prior inconsistent statement as substantive evidence; (3) the prosecutor committed misconduct; and (4) the trial court relied on inaccurate information in sentencing petitioner. The Court will deny petitioner's claims because they are without merit. The Court also declines to issue a certificate of appealability and will

deny leave to appeal in forma pauperis.

## II.     Facts

The Michigan Court of Appeals relied on the following facts in affirming petitioner's conviction. They are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant shot Recarro Chappell (the victim), allegedly because he thought that the victim was trying to steal his vehicle. The victim died of multiple gunshot wounds. The medical examiner determined that the manner of death was homicide. There were no eyewitnesses to the killing. Therefore, most of the evidence was circumstantial, and included statements defendant made after the shooting.
>
> Three prosecution witnesses testified that they heard shooting in their neighborhood, and that shortly thereafter, defendant asked them to come and look at a dead body in a neighborhood alley, to see if they could identify the deceased. Defendant said alternatively that he shot at the victim because he thought the victim was stealing his car, and that he shot near where he thought the victim had been and accidentally shot the victim. Several witnesses testified that defendant apologized when the defendant learned that some of them had been friends with the victim. Several witnesses also testified that defendant told them not to say anything about the shooting, and the witnesses acknowledged being afraid to tell the authorities, because they feared that the defendant might retaliate against them. One of these witnesses told another witness that a person admitted to him that he shot the victim, but this witness denied that defendant had made that statement to him.

*People v. Jones*, No. 284888, 2009 Mich. App. LEXIS 2709, at *1-2 (Mich. Ct. App. Dec. 29, 2009).

Following his conviction and sentence, petitioner filed a direct appeal in the Michigan Court of Appeals. His appellate brief raised the following claims:

> I. The trial court committed reversible error when, after the jury reported that one member was not deliberating, the court gave a coercive instruction, which ultimately forced that juror to abdicate rather than adhere to his or her conscientious opinion; and trial counsel was ineffective for failing to object.

>II. The trial court deprived defendant of a fair trial when it allowed extrinsic evidence of Marvin Wilburn's prior inconsistent statements to be admitted as substantive evidence, especially to the extent that those statements conveyed hearsay declarations other individuals supposedly made to Wilburn.
>
>III. Substantial prosecutorial misconduct deprived defendant of a fair trial when the prosecutor falsely claimed that defendant bragged about committing the crime and threatened witnesses; and trial counsel was ineffective for failing to object.
>
>IV. Defendant is entitled to be resentenced where he was sentenced on the basis of inaccurate information, which in turn resulted in errors in the scoring of the sentencing guidelines; and trial counsel was ineffective for acquiescing to the inaccurate score.

The Michigan Court of Appeals rejected these claims and affirmed the jury's verdict. *Id*. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, which the court denied by form order. *People v. Jones*, 486 Mich. 930 (2010) (table). The arguments raised in petitioner's request for habeas relief mirror those he presented on direct appeal.

### III.  Standard of Review

The standard of review in this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Petitioner is entitled to a writ of habeas corpus pursuant thereto only if the state courts' adjudication of his claims on the merits:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" clearly established federal law if a state court reaches a conclusion that is opposite to that of the Supreme Court on a question of law or if the state court

decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. __, __, 130 S.Ct. 1855, 1862 (2010) (*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997)); *see Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786. Therefore, in order to obtain habeas

4

relief in federal court, a petitioner must demonstrate that the state courts' decisions were "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

## IV. Analysis

### A. Reluctant Juror

Petitioner asserts that after the jury sent a note to the trial judge implying that they were deadlocked, the court coerced them to reach a verdict by informing them that it was their civic duty to do so and they would be required to deliberate for five days. This claim does not provide a basis for habeas relief. Defendants in criminal cases are entitled to an uncoerced jury verdict. *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). Review of a habeas petitioner's contention that the jury was improperly coerced requires a court to "consider the supplemental charge given by the trial court 'in its context and under all the circumstances.'" *Id*. at 237 (quoting *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curiam)).

In this case, the jury sent a note to the trial court after deliberating for three and a half hours. The jurors asked the trial court how they should proceed "if one juror refuses to make a decision either way." T 7/17/06 at 32. The trial court interpreted the note to mean that one of the jurors refused to deliberate. The trial court instructed the jury as follows:

> You took an oath, ladies and gentlemen, as jurors to make a decision one way or the other. If someone is refusing to deliberate, then they are not following their oath. They are required to deliberate. And as far as deliberations are concerned, you will be deliberating as long as the trial took, and so that will be about another five days.

*Id.*

A simple admonition to "keep deliberating" is not coercive. *United States v. Figueroa-Encarnacion*, 343 F.3d 23, 32 (1st Cir. 2003); *United States v. Coffman*, 94 F.3d 330,

5

336 (7th Cir. 1996). The jury's note did not indicate that deliberations had reached the point of a deadlock but, instead, suggested that one juror refused to deliberate altogether. Petitioner has not cited any clearly established Supreme Court precedent that bars a trial court from instructing jurors that they must engage in deliberations.

It is true that an instruction which appears to give a jury no choice but to return a verdict can be impermissibly coercive. *See Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curiam). In *Jenkins*, after about two hours of deliberation, the jury sent a note informing the district judge that it was deadlocked. *Id*. The district judge called the jury into the courtroom and "in the course of his response stated that 'You have got to reach a decision in this case.'" *Id*. The Supreme Court found the instruction to constitute plain error and reversed and remanded the case for a new trial. *Id*. The facts in this case are inapposite. While the trial court instructed the jury that they took an oath to make a decision "one way or the other," it did not do so in an attempt to break a deadlock. Rather, the trial court's apparent intention was to inform a recalcitrant juror that he or she had taken an oath to participate in deliberations and come to a decision. *See, e.g., United States v. Jackson*, 443 F.3d 293, 296-298 (3d Cir. 2006) (finding no coercion where, in response to a note from the jury stating that one juror could not agree with the others, the district court reminded the jurors of their oath and stated that the case would have to be retried if they could not agree); *United States v. Henry*, 325 F.3d 93, 107 (2d Cir. 2003) (noting that "[t]he mere fact that the district court reminded the jurors of their oaths and responsibility to deliberate and attempt to render a true verdict does not render the charge coercive"). Petitioner's claim is, thus, without merit.

    **B.**    **Admission of Prior Inconsistent Statement**

Petitioner contends that the trial court erred when it admitted a witness's prior inconsistent statement into evidence. The prosecution's chief witness, Jamond Jones, testified that petitioner approached both him and Marvin Wilburn on the day after the shooting and asked Jones to identify a body lying in an alley. Petitioner told Jones and Wilburn that he had shot the man and wanted to know whether Jones knew him. Wilburn, on the other hand, testified that it was a man named Lebron who asked them to check the body, and that he never saw Lebron again after the incident. Wilburn also testified that he told Henry Nash, the victim's brother, that somebody approached him and admitting to the shooting, but he claimed that he never identified the man as petitioner. In response, the prosecutor elicited testimony from Nash that Wilburn related to him that petitioner was the individual who, in fact, admitted to the shooting. Petitioner asserts that Nash's testimony consisted of prior inconsistent statements that amounted to inadmissible hearsay. The Michigan Court of Appeals found that the trial court properly admitted the testimony to impeach Wilburn's credibility and not merely "under the guise of impeachment."

The Court finds that petitioner cannot prevail on this claim because alleged errors in the application of state procedure or evidentiary law are not cognizable grounds for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sera v. Mich. Depot of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993); *see also Olsen v. McFaul*, 843 F.2d 918, 933 (6th Cir. 1988) (such claims are almost always rejected as grounds for granting a writ of habeas corpus). Questions concerning the admissibility of evidence, as well as its probative or prejudicial value, are properly left to the sound discretion of the trial court. *Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir. 1979).

Furthermore, petitioner does not point to any constitutional violation arising from the admission of the inconsistent statements. An evidentiary ruling will violate due process, when it is so egregious that it results in a denial of fundamental fairness. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). The use of prior inconsistent statements during the trial does not rise to such a level. Moreover, the admission of such statements does not violate the Confrontation Clause because Wilburn was available for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59, n.9 (2004).

The Michigan Court of Appeals determined that it was proper to impeach Wilburn's testimony with Nash's contrary account of what Wilburn had told him. A federal habeas court is bound by a state appellate court's ruling that certain testimony is not hearsay, because state law governs questions concerning the admissibility of evidence. *See Johnson v. Renico*, 314 F. Supp. 2d 700, 705 (E.D. Mich. 2004) (internal citations omitted). To the extent petitioner argues that the trial court violated his right to a fair trial when it admitted the prior inconsistent statements into evidence, such claim solely raises an error of state law that is not cognizable on federal habeas review. *See David v. Lavinge*, 190 F. Supp. 2d 974, 981-982 (E.D. Mich. 2002).

**C.     Prosecutorial Misconduct**

Petitioner's prosecutorial misconduct claim is meritless as well. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-645 (1974). Courts will evaluate the totality of the circumstances surrounding each individual case to ascertain whether a trial is

fundamentally unfair. *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982). This analysis places the appropriate focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir.1997). A federal court must be mindful of the fact that "state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006)(quoting *Donnelly*, 416 U.S. at 645). Consequently, a habeas petitioner must establish that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. __, __, 132 S. Ct. 2148, 2155 (2012) (per curiam) (quoting *Harrington*, 131 S. Ct. at 786-787).

Petitioner asserts that it was improper for the prosecutor to assert both in the opening statement and closing argument that petitioner boasted about shooting the victim because there was no evidence to support these remarks. At trial, however, the evidence demonstrated that petitioner approached Jones and Wilburn, asked them to go look at a body in an alley and inquired whether the two men knew the victim. The evidence also showed that petitioner later told Jones's mother and sister that he had shot someone. A fair inference could be drawn from petitioner's conduct that he wanted to "show off" the fact that he had shot and killed someone. The prosecutor's comments were, thus, not improper and they certainly were not so egregious as to render the entire trial fundamentally unfair.

### D. Sentencing information

Petitioner asserts that his sentence was based on inaccurate information because one of the prior-offense variables in the sentencing guidelines was scored incorrectly. Petitioner specifically

9

argues that the guidelines in his case were mistakenly scored to reflect that he was on parole or probation at the time of the offense. He also asserts that his counsel was ineffective for failing to raise this error at the time of sentencing. On the contrary, during his direct appeal, the Michigan Court of Appeals found that the information on the trial court's database, which showed that petitioner had not been discharged from a prior felony, sufficiently supported the scoring of the guidelines.

It is well-established that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle*, 502 U.S. at 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Petitioner's argument that the state court erred in scoring his sentencing guidelines is based solely on the state court's interpretation of the requirements of state law. It does not implicate any federal rights. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"). "[A] claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review." *Adams v. Burt*, 471 F. Supp. 2d 835, 844 (E.D. Mich. 2007); *see also Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999); *Thomas v. Foltz*, 654 F. Supp. 105, 106-107 (E.D. Mich. 1987).

Petitioner argues in the alternative that his counsel was ineffective for failing to challenge the scoring at the sentencing hearing. This argument fails because petitioner has not demonstrated that he was prejudiced by his counsel's actions. As indicated, the Michigan Court of Appeals rejected the scoring claim on the merits, and petitioner failed to proffer any evidence to support his contention that he was not on probation at the time of the offense. If "one is left with pure speculation on whether the outcome of . . . the penalty phase could have been any different," there

10

has been an insufficient showing of prejudice. *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004). As petitioner does not establish that the trial court would have been inclined to impose a lesser sentence had defense counsel challenged the sentencing score, petitioner is unable to show that he was prejudiced by counsel's purported ineffectiveness. *See Spencer v. Booker*, 254 F.App'x 520, 525-26 (6th Cir. 2007).

### E. Certificate of Appealability

In the event petitioner appeals this Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A district court need not conduct a full merits review, but must limit its examination to a threshold inquiry of the underlying merits of petitioner's claims. *Id.* at 336-337.

In view of the aforementioned standard, petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that petitioner should not be granted leave to proceed in forma pauperis on appeal, as any appeal would be frivolous. See Fed. R. App. P. 24(a).

Accordingly,

IT IS ORDERED that the petition for writ of habeas corpus is denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

IT IS FURTHER ORDERED that permission to proceed in forma pauperis on appeal is denied.

S/ Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated:  November 28, 2012
        Detroit, Michigan